IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **MICHAEL SMITH,** § | | |
| *Plaintiff* § | | |
| § | | |
| v. § | CIVIL NO._____ | |
| § | | |
| **JAMES MCGEE,** § | | |
| *Defendant.* § | **JURY TRIAL DEMANDED** | |

PLAINTIFF'S ORIGINAL COMPLAINT

1.  This complaint is brought by Plaintiff to remedy damages caused by the Defendant who at all times material to these complaint allegations acted under color to state law to deprive Plaintiff of rights, privileges, and immunities guaranteed to Plaintiff under the Constitution and laws of the United States.

JURISDICTION AND VENUE

2.  Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. 1331 and 1343. The enforcement provision involved is 42 U.S.C. Section 1983. Venue is proper as the Plaintiff and Defendant reside within the jurisdiction of the Court.

PARTIES

3.  The Plaintiff is Michael Smith, TDCJ-CID No. 702861, whose address is 7011 Kinney Street, Houston, Texas 77087.

    The Defendant, who is being sued in his individual capacity, is James McGee, employed as an Assistant Warden by the TDCJ-CID at the Goree Unit, 7405 Highway 75 South, Huntsville, Texas 77344. Summons and a copy of Plaintiff's Original Complaint may be served

1

upon the Defendant at the Goree Unit, TDCJ-CID, 7405 TX-75, Huntsville, Texas 77340, during normal business hours or wherever he may be found.

### FIRST CAUSE OF ACTION

4.  Plaintiff was confined as a general population offender at the McConnell Unit when the events giving rise to this complaint occurred. On August 24, 2015, at approximately 10:45 a.m., Defendant James McGee, then employed by the TDCJ-CID at the McConnell Unit with the rank of 'Major', walked to the general population dormitory housing where Plaintiff was housed, approached Plaintiff and gave Plaintiff a direct order to do the following: Plaintiff was to walk to the maintenance department in the company of an Officer Solis, get a pressure washer, a 5-gallon can of gas, and a 50-foot ladder. Once Plaintiff had procured those items he was to proceed to "pressure-wash" outside walls of dormitories in order to remove mold that had accumulated on the walls.

5.  Plaintiff immediately complained to Defendant McGee concerning the ordered work assignment mentioned in paragraph 4. above. Plaintiff complained the sidewalk and grass areas adjacent to the area of the walls to be pressure-washed were uneven, creating an unstable surface for the ladder, and when Plaintiff would be trying to stand securely on the ladder while using the pressure-washer; and that the ladder was too tall for the work task, as well as inappropriate. Plaintiff requested of Defendant McGee that Plaintiff be permitted to utilize a Jini Lift, something that would provide a reasonably stable platform or working base on which Plaintiff could stand while operating the pressure-washing equipment. However, Defendant McGee ignored Plaintiff said complaints regarding the lack of work-place safety, and denied Plaintiff's request to utilize a Jini Lift, stating to Plaintiff that he, McGee, didn't need an

offender playing on an expensive piece of equipment.  Defendant McGee ordered Plaintiff to proceed with the assigned work task mentioned above.

6.    At the time Defendant McGee ordered/compelled Plaintiff to obtain the items and perform the work task mentioned in paragraphs 5. and 6. above, McGee had knowledge of the following information which was known by offenders who performed work assignments at or near dormitories, and employees of the TDCJ-CID, such as Defendant McGee, who by direct order to offenders compel offenders to engage in work tasks, including the nature of the task assigned to Plaintiff by Defendant McGee:

a.    The ground and grass-covered surface around the dorms was uneven, as well as significant portions of nearby sidewalks, where they were located;

b.    A "TDCJ Risk Management Circular," dated July, 2014, distributed to officials such as Defendant McGee, as well as made available to TDCJ-CID employees generally, admonished that: choosing the appropriate method to access heights is crucial to the safety of the individual performing a task, with ladder safety discussed in the same Risk Management Circular;

c.    A "TDCJ Risk Management Circular," dated April, 2013, admonished TDCJ-CID officials and employees of monthly training sessions related to work safety, and to be aware of their surroundings in work areas, which is the first step in identifying hazardous and unsafe conditions.  Defendant McGee had participated in numerous safety training sessions involving work place safety during his employment with the TDCJ-CID, prior to August 24, 2015.

d.    That a risk to the personal safety of a worker is created when using a pressure washer wand while standing on a ladder, a practice that is avoided by commercial pressure washers in the free-world.  It is avoided because once the worker squeezes the trigger of the wand a powerful recoil on the spray wand can cause the worker to lose balance on the ladder and

fall, or literally throw the worker off balance and off the ladder.  That is common knowledge involving pressure-washing, and as a matter of common sense.  Commercial pressure washers use elevated work platforms, vehicles, scaffolding, or extension wands.  Elevated work platforms, vehicles, scaffolding, Jini Lifts, were available to be utilized in the work task ordered by Defendant McGee in this instance, and are utilized in pressure-washing operations in the TDCJ-CID.  During the normal course of pressure-washing both hands of the worker are needed to hold the spray wand.

      e.      Pursuant to TDCJ-CID offender disciplinary rules, a failure to obey an order from a TDCJ-CID staff member constitutes a violation of written policies and/or rules and results in disciplinary action and sanctions against the offender who fails to comply with the order.

      7.      Following the order given Plaintiff by Defendant as mentioned in paragraphs 4. and 5. Above Plaintiff proceeded to the maintenance department, with Officer Solice, and obtained the items/equipment mentioned in paragraph 4. above.  Plaintiff proceeded with the equipment to the dorms area and began pressure-washing the dorm walls while standing high up on the extension-type ladder.  Plaintiff experienced unsteadiness on the ladder, and when Plaintiff pressed the trigger on the spray wand there was a powerful recoil on the spray wand that caused instability of Plaintiff upon the ladder and shaking of the ladder.  The recoil on the spray wand caused Plaintiff to lose his balance on the ladder, and fall head first, from approximately four steps from the top of the ladder, all the way to the ground, causing both of Plaintiff's wrists to break and resulting in a serious skull fracture, severe pain and suffering.

      8.      Following the fall from the ladder mentioned in paragraph 7. Above Plaintiff was transported to a hospital in Beeville, Texas.  However, Plaintiff's injuries were so severe that he was airlifted to a hospital trauma center in Corpus Christi, Texas where hospital medical staff induced a coma due to excessive bleeding in Plaintiff's brain.  Plaintiff remained in a coma for

approximately one week.  During that time Plaintiff's family was contacted and requested by hospital medical personnel to authorize the discontinuance of life support for Plaintiff.  Plaintiff's family refused to do so.  Several days later Plaintiff awakened and hospital medical staff continued resuscitating measures.  Plaintiff was subsequently transferred by ambulance to the Telford Unit, in New Boston, Texas, where his serous medical condition worsened.  Plaintiff was then transported by ambulance to the University of Texas Medical Branch, at Galveston, Texas, for additional and continuing treatment, with surgery scheduled.  Plaintiff was returned to the McConnell Unit during October, 2015, and he continues to suffer severe physical, mental and emotional injuries, as well as vision loss.  Plaintiff was subsequently released from the TDCJ-CID.

9.      When Defendant McGee ordered/compelled Plaintiff to perform the pressure-washing work task on August 24, 2015, as mentioned above in paragraphs 4. Through 7., Defendant McGee had knowledge that he was compelling Plaintiff to perform the work in a dangerous work-place situation and method, by standing on a ladder, high off the ground, where the ground surface was uneven and when using a pressure washer and spray wand while standing on a ladder.  Defendant McGee compelled Plaintiff to perform the physical labor-type work which endangered Plaintiff's life and/or safety, resulting in extremely severe injuries inhering to Plaintiff, and which under the circumstances evidenced a deliberate indifference to the safety and welfare of Plaintiff and his Eighth and Fourteenth Amendment Rights under the United States Constitution.  Defendant McGee purposefully ignored the threat to Plaintiff's safety and welfare by compelling Plaintiff to work under dangerous work conditions, and in rejecting an alternative, safe method for doing such work as mentioned above.  As a result of Defendant's McGee's deliberate indifference Plaintiff sustained severe and on-going injuries, including two broken wrists, a fractured skull diagnosed as left zygomatic arch fracture, continuing severe migraine

headaches, vision impairment, and close to death experience, as well as severe mental and emotional suffering and distress. Defendant McGee acted with a reckless disregard for the safety and welfare of Plaintiff, as well as toward Plaintiff's Eighth and Fourteenth Amendment Rights. Further, the order from Defendant McGee, to perform the task in unsafe work conditions, exacerbated the inherent dangerousness of the working conditions as mentioned above.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. The TDCJ-CID grievance procedure for offenders requires that an aggrieved offender file a step 1 grievance within fifteen days following a complained-of incident. Plaintiff was unable to file a step 1 grievance within the applicable time period due to being incapacitated and under medical treatment following the severe injuries he sustained on August 24, 2015, and as mentioned above in this complaint. However, after being returned to the McConnell Unit, during October, 2015, Plaintiff filed a step 1 and step 2 grievance complaining of Defendant McGee placing Plaintiff in the unsafe work situation. The McConnell Unit Administration responded to Plaintiff's step 1 grievance, denying any employee liability, which is customary in such situations, but failed to respond to Plaintiff's step 2 grievance, claiming that no step 2 grievance was on file, although Plaintiff did file a step 2 grievance. Plaintiff filed a separate step 1 grievance, complaining that his grievances had not been responded to by the McConnell Unit Administration. Further, Plaintiff was released from the TDCJ-CID prior to the filing of this complaint, making exhaustion of administrative remedies unnecessary.

## RELIEF REQUESTED

11. Plaintiff requests the following relief, as well as trial by jury:

a. Enter Judgment, declaring the complained-of acts and/or omissions on the part of Defendant James McGee as violating Plaintiff's Eighth and Fourteenth Amendment Rights under the United States Constitution.

b.	Award Plaintiff, as compensatory damages, of and against Defendant James McGee in his individual capacity, the sum of $500,000.00.

c.	Award Plaintiff, as exemplary damages, of and against Defendant James McGee, in his individual capacity, the sum of $500,000.00, for the reckless disregard of Plaintiff's Eighth and Fourteenth Amendment Rights.

d.	Award Plaintiff costs and attorney's fees, as well as pre and post-judgment interest.

e.	Award Plaintiff such further relief in his favor which is in the interest of justice.

Respectfully submitted,

_/S/ *Tammy E. Henderson Peden*_
TAMMY E. HENDERSON PEDEN
Attorney at Law
State Bar No. 24037845
FID:	35242
7100 Regency Square Blvd., Ste. 160
Houston, Texas 77036
Email: tpedenlaw@netscape.net
Telephone:	713-476-0988
Facsimile:	713-244-2707

ATTORNEY FOR PLAINTIFF
MICHAEL SMITH